THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* PATRICK H. McGANN, APPELLANT.

*Constitutional law — the legislature may prohibit the manufacture or sale of an article deemed by it to be injurious to public health — 1884, chap. 202.*

Section 6 of chapter 202 of 1884, provides that "no person shall manufacture out of any oleaginous substance or substances, or any compound of the same, other than that produced from unadulterated milk, or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk, or cream of the same, or shall sell, or offer for sale, the same as an article of food." The act is entitled "An act to prevent deception in sales of dairy products."

*Held,* that the said sixth section prohibited, absolutely, the manufacture and sale. as therein specified, of any article designed to take the place of butter or cheese, without regard to whether or not it was manufactured or sold with an intent to deceive.

That the legislature had power to pass the act by virtue of the police power vested in it.

That the act was constitutional and valid. (PRATT, J., dissenting.)

APPEAL from a judgment of the Court of Special Sessions, convicting the defendant of a misdemeanor in having violated the provisions of chapter 202 of the Laws of 1884.

*James Troy*, for the appellant.

*James W. Ridgway*, district attorney, for the respondent.

DYKMAN, J.:

The legislature of this State has enacted a law with a title at its head indicative of a purpose to prevent deception in sales of dairy products in this State. (Chap. 202, Laws of 1884.) Section 6 of this law has in it these words: "No person shall manufacture out of any oleaginous substance or substances, or any compound of the same, other than that produced from unadulterated milk or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk, or cream of the same, or shall sell, or offer for sale, the same as an article of food." Then the same section specifies the punishment for its violation.

This defendant has been convicted of a misdemeanor for violation of this section of the law, on proof that he manufactures what is called oleomargarine from an oleaginous substance other than that produced from milk or cream, namely, animal oil extracted from the tallow of beef; that this article is manufactured for sale as a substitute for butter; that it resembles butter so much in appearance and taste that it might be taken for butter by any ordinary person, and that it was designed by the defendant to take the place of butter as an article of food and a substitute therefor. He, however, manufactures it as and calls it oleomargarine, and does not pretend or represent that it is butter, but states expressly that it is oleomargarine and not butter, and that it is designed and intended as a substitute therefor; that he has sold about eight pounds of this article as oleomargarine with the design that it should be used for food as a substitute for butter, and that the purchaser knew how it was made and of what it was composed and bought it for use as an article of food in the place of butter.

From such conviction the defendant has appealed to this court, on the theory that the section under which his condemnation was secured was intended only to apply to a case of deception in the manufacture and sale of the article specified. The language employed, however, will not admit of that mild interpretation. It prohibits both the manufacture out of any oleaginous substance, except that produced from milk or cream, of any article designed to take the place of butter or cheese produced from milk or cream, and also the sale, or offer for sale, of the same as an article of food. The prohibition, so far as it extends, is absolute, and if the legislature possessed the power to make the law it must be respected and enforced.

Under the American system of government the uncontrolled power of legislation resides in the people themselves as an aggregate body politic. On the separation of the colonies from the mother country all sovereignty and supremacy devolved upon the people in undiminished plenitude. But they do not exercise sovereign power directly. In the first place all the people of all the States established the general government by the adoption of the Constitution of the United States, in which they delegated to the national government certain enumerated powers. Then the people of each State established State governments and invested the same with all the power which they did not expressly withhold; so that the powers of the general government are definite and restricted, while the powers of the State governments are general and residuary, and all power not conferred on the general government belongs to the State governments or to the people. The State governments exercise all the powers of sovereignty not conferred on the national government, so far as the people permit them to be exercised at all. Without constitutional limitations the power of the legislature to make laws would be absolute, because the lawmaking power is intrusted by the people to the legislative branch of the State government. Whether a statute is constitutional or not is a question of power; and if that question be answered in the affirmative the courts can institute no inquiry into the proper exercise of the power. They must assume that the power and discretion have been judiciously and wisely exercised, and that the legislature had before it, at the time of its action, all requisite evidence to justify

the same. But the people have set certain limitations to the law-making powers, some of which are expressed and some are implied. One of the express limitations is that no person shall be deprived of life, liberty or property without due process of law. If, therefore, the law in question falls under the condemnation of the Constitution it is because it offends against this limitation of legislative power.

This constitutional restriction has received exhaustive examination in our Court of Appeals in the cases of *Wynehamer* v. *The People* (13 N.Y., 378) and *Bertholf* v. *O'Reilly* (74 id., 509); and in both of these cases the conclusion was reached that notwithstanding such restriction the legislative power extends to entire prohibition of the traffic in spirituous liquors. This doctrine proceeds on the theory that the legislature may prohibit and suppress any traffic injurious or demoralizing either to the public health or public morals, or in its tendencies or consequences, and that the conclusion and decision of the legislature on the question of fact involved is final and conclusive.

The same doctrine was enunciated by the Supreme Court of the United States in the *Slaughter-house cases* (16 Wall., 36), where a law of the State of Louisiana, which operated very disastrously on large business interests and materially impaired the value of private property, was held constitutional and valid. These cases are sufficient to sustain the constitutionality of the law under consideration. It may well be that such legislation requires the highest reason for its justification, but it is not the province of the courts to inquire into their existence. Complaints against such enactments must be carried to the legislature and not to the courts.

It must be assumed in the consideration of this statute that the legislature ascertained that the use of this prohibited article was injurious and detrimental to the public, and so found it necessary to advance in respect to the same, beyond the point of regulation, to actual prohibition. The presumption is that such legislative action was deemed necessary for the welfare of the public and it cannot be abrogated by the courts. With these necessary assumptions this law falls easily within the police power of the State, which is a power vested in the legislature to ordain such laws and ordinances as shall be deemed essential and necessary for the welfare, health and property of the public. The underlying foundation of the power is the principle that all property must be so used that it shall

not become injurious to others. All reasonable restraints may be imposed for the attainment of this end which may be deemed necessary by the law-making power, even though they amount to absolute prohibition, and the propriety of such restrictions is a legislative question entirely free from all judicial control. The enactment of this law in question was, therefore, within the scope of legislative power as the same has been delegated to the senate and assembly by the people of the State in the fundamental law. It prohibits the manufacture and sale of oleomargarine as an article of food in place of butter, and the defendant has been convicted of a violation of its provisions, and in our view the conviction must be affirmed.

BARNARD, P. J., concurred.

PRATT, J. (dissenting):

I am constrained to dissent from the views of a majority of the court in this case upon the following grounds: If section 6 of the act under which the defendant was convicted is to be construed as an absolute prohibition of the manufacture of pure and wholesome oleomargarine, unconnected with any design to deceive the public or simulate dairy butter, it is unconstitutional as being within the prohibition of article 1, section 6 of the State Constitution.

There are certain well settled principles to be kept in view in considering this class of questions. Before a statute can be annulled by the courts its repugnancy to the Constitution should be clearly demonstrated. Neither can courts sit in review of the discretion of the legislature, or determine the wisdom or propriety of legislative action, and every intendment is in favor of the validity of statutes.

In *Bertholf* v. *O'Reilly* (74 N. Y., 516) it was held by the Court of Appeals " that no law can be pronounced invalid for the reason simply that it violates our notions of justice, is oppressive and unfair in its operation, or because, in the opinion of some or all of the citizens of the State, it is not justified by public necessity or designed to promote the public welfare. We repeat, if it violates no constitutional provision it is valid and must be obeyed." It is equally well settled that whether an act is obnoxious to the Constitution is a question for the courts to pass upon, and for that purpose it is competent for the court to look to the circumstances and purpose under which and for which an act is passed. That the substance from which oleo-

margarine is made is property cannot be disputed. Neither can it be claimed that this act was passed to protect or preserve the public health, for the reason that it nowhere appears that such was the purpose; and an entirely different purpose does appear in the title. If we are to seek for an expression of the purpose in the act itself, it is plain that its object is to create and protect a monopoly in the manufacture of dairy butter and prevent any successful competition therewith. In this view it deprives the owner of the substance from which oleomargarine is made, of the beneficial enjoyment of his property and the fruits of his lawful labor.

It was held *In re Peter Jacob* (19 Weekly Dig., 533), that it is not constitutionally competent for the legislature to deprive by any arbitrary enactment a laborer in any lawful vocation of his right of work, and of enjoyment of the fruits of his work, in his residence or in his own way, except for purposes of police or health regulations.

It is true that the statute then under consideration recognized the legality of the labor and only restricted it to certain places, while this prohibits all the labor or manufacture if the article is to be used thereafter as a substitute for butter, but the principle is the same. In both cases the citizen is deprived of the beneficial use of his lawful property.

Until the legislature, in the exercise of its inherent powers to enact police and health laws, prohibits the manufacture of oleo-margarine, it seems to me a citizen has a right to make any pure and wholesome article of food and sell it for what it actually is, and it is immaterial what lawful use shall be made of it afterwards. If a man is too poor to buy good butter I see no objection to his using oil, cheese or honey, or any other substitute for butter. A law prohibiting the making of an iron rake to be used as a substitute for one made entirely of wood could be passed with just the same legal effect, as a law providing that oleomargarine should not be made to be used as a substitute for butter. I do not claim that the legislature cannot do all this, but that it can only do it to protect the public health. Assuming even that it may pass such a law, if in the exercise of its discretion it deems it best for the public health, and that the courts cannot review such an exercise of discretion, however unwise it may be, yet this law, however, was not passed under the exercise of any such discretion or for any such purpose,

nor can we indulge in the presumption that such was the purpose of the act when we read the title or the act itself.

The whole question as to the constitutionality of this section, therefore, turns upon the point whether the legislature having passed this statute the courts can assume that it was passed for the purpose of protecting the public health. In my view it was not passed for that purpose, and is, therefore, not to be upheld unless another construction can be placed upon it. In the title the legislature announced its purpose to be " To Prevent Deception in the Sale of Dairy Products." If the title is to be read in construing the sixth section, then it must be held to relate to and proscribe only deceptive simulations and spurious impositions upon the public, or to an article made with design to deceive the public, and cannot be held to include a wholesome and pure article of food openly and honestly made with a design to sell it for exactly what it is, and without any design to deceive the purchaser.

In the latter view an indispensable element in a conviction would be some intent to deceive, or some act that might operate as an imposition upon the public as a " deception in dairy products." Merely making pure oleomargarine butter, and exposing it for sale as such, without any notice or attempt to pass it off as genuine dairy product, would not come within the purview of the statute, the purpose of which is to prevent deceptions. The act in the severity of its penalties, in its casting the burden of proof upon the defendant to rebut a presumption of willful guilt arising from the doing of any act prohibited therein, may well be held to impose its penalties only when oleomargarine is manufactured for sale, or sold or designed to deceive the public. If the latter is the correct view this conviction cannot be upheld, as no such case was made out.

I have not examined or cited authorities, as I have assumed the utmost that can be claimed in favor of the absolute power of the legislature. While the subject is one that has been frequently before the courts and elicited much discussion, it does not seem to me that the present case requires any critical examination to present the legal issues involved. Whichever construction is placed upon the sixth section of the two herein stated, it is clear the conviction must be set aside.

Judgment of County Court affirming conviction affirmed.