## DETERMINED IN THE

# THIRD DEPARTMENT,

### AT

## GENERAL TERM,

### September, 1885.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR CIPPERLY, Appellant.

*Sale of adulterated milk — the legislature cannot establish by statute a standard by which its adulteration is to be conclusively established* — 1884, chap. 202.

The defendant was convicted, under chapter 202 of 1884, of the offense of selling impure, unhealthy, adulterated and unwholesome milk. Upon an appeal taken by him from the judgment convicting him:

*Held,* that so much of section 1 of the said act as provides that "no person or persons shall sell or exchange, or expose for sale or exchange, any unclean, impure, unhealthy, adulterated or unwholesome milk," is, if the prohibition be limited to milk to be used for the purposes of food, constitutional and valid, it being plainly within the power of the legislature to pass such an act as a police regulation to protect the public health.

That so much of the thirteenth section of the said act as provides that "in all prosecutions under this act relating to the sale and manufacture of unclean, impure, unhealthy, adulterated or unwholesome milk, if the milk be shown to contain more than eighty-eight per centum of water or fluids, or less than twelve per centum of milk solids, which shall contain not less than three per centum of fat, it shall be declared adulterated," is unconstitutional and void, because it deprives the defendant of his liberty and property without due process of law, in that it deprives him of the right, upon the trial of the charge against him, to have the issue determined according to the evidence of the fact, and compels him to submit to the statutory declaration thereof without having the truth ascertained. (LEARNED, P. J., dissenting.)

*It seems,* that if the result of the statute is to prohibit the sale of pure and wholesome milk, then within the case of *People* v. *Marx* (99 N. Y., 377) the act would be void as being beyond the legislative power. (LANDON, J.)

APPEAL from a judgment of the Court of Special Sessions of the city of Albany, entered upon the conviction of the defendant of the offense of selling adulterated milk.

The defendant was arrested for a violation of chapter 202 of the Laws of 1884, in selling adulterated milk ; he was tried before the Court of Special Sessions, held by the recorder of the city of Albany, convicted and fined twenty-five dollars. Upon the trial it appeared that the defendant was engaged in selling milk ; that a sample of his milk was procured from the same can he was selling from, and that upon being tested it was found to contain more than eighty-eight per cent of water, less than twelve per cent of milk solids and less than three per cent of fat. It also appeared that nothing had been put in the milk and nothing taken from it. The defendant asked for his discharge upon the ground that the law was in violation of his constitutional rights. Objection was also taken by the defendant that no criminal intent was shown, and exceptions taken to the exclusion of evidence by which it was proposed to show that defendant had no criminal intent.

The sections of the statute upon which the decision of the question involved depends, read as follows :

SECTION 1. No person or persons shall sell or exchange, or expose for sale or exchange, any unclean, impure, unhealthy, adulterated or unwholsome milk, or shall offer for sale any article of food made from the same or of cream from the same. This provision shall not apply to pure skim cheese made from milk which is clean, pure, healthy, wholesome and unadulterated, except by skimming. Whoever violates the provisions of this section is guilty of misdemeanor and shall be punished by a fine of not less than twenty-five nor more than two hundred dollars, or by imprisonment of not less than one or more than six months, or both such fine or imprisonment for the first offense, and by six months' imprisonment for each subsequent offense.

SEC. 13. In all prosecutions under this act, relating to the sale and manufacture of unclean, impure, unhealthy, adulterated or unwholesome milk, if the milk be shown to contain more than eighty-eight per centum of water or fluids, or less than twelve per centum of milk solids, which shall contain not less than three per centum of fat, it shall be declared adulterated, and milk drawn from cows

within fifteen days before and five days after parturition, or from animals fed on distillery waste, or any substance in the- state of putrefaction, or fermentation, or upon any unhealthy food whatever, shall be declared unclean, impure, unhealthy and unwholesome milk. This section shall not prevent the feeding of ensilage from silos.

*Eugene Burlingame,* for the appellant.

*D. Cady Herrick,* for the respondent.

LANDON, J.:

The defendant was convicted under chapter 202, Laws of 1884, of the offense of selling adulterated milk. It is objected that sections 1 and 13 of the act in question are unconstitutional. The first section of the act provides that "no person or persons shall sell or exchange or expose for sale, or exchange any unclean, impure, unhealthy, adulterated or unwholesome milk." Assuming that it was within the legislative intention to limit this prohibition to the purposes of food, we think it was plainly within the legislative power to pass this section, so far as quoted, as a police regulation to protect the public health. This seems to be well established by authority. (*People ex rel. Cox* v. *Special Sessions,* 7 Hun, 214; *Blazier* v. *Miller,* 10 id., 435; *Commonwealth* v. *Waite,* 11 Allen, 264; *Commonwealth* v. *Farren,* 9 id., 489.) Similar statutes have long stood unchallenged. (Chap. 467, Laws of 1862; chap. 544, Laws of 1864; *Polinsky* v. *People,* 73 N. Y., 65.)

The defendant, however, was convicted by force of the thirteenth section of the statute, which provides that "in all prosecutions under this act relating to the sale and manufacture of unclean, impure, unhealthy, adulterated or unwholesome milk, if the milk be shown to contain more than eighty-eight per centum of water or fluids, or less than twelve per centum of milk solids, which shall contain not less than three per centum of fat, it shall be declared adulterated." The milk in question was shown to contain eighty-eight and ninety-six thousandths per centum of water and two and six hundred and fifty-six thousandths per centum of fat, and as it fell short of the statutory standard it was by force of the statute declared to be adulterated, and the defendant was convicted, not-

withstanding he adduced evidence tending to show that the milk was entirely a natural and wholesome product, and wholly unadulterated or diluted.

If experience has shown that milk which does not possess the ingredients specified in the statutory standard is unwholesome and unfit for food, it may well be within the power of the legislature to prohibit its sale. But such is not this prohibition. The defend-ant was not charged with selling milk containing more than eighty-eight per centum of water, and less than twelve per centum of milk solids. He was charged with selling "impure, unhealthy, adulterated and unwholsome milk." Upon that charge he was entitled to a fair trial according to the " due process of law." " Due process of law,' says Judge COOLEY, quoted with approbation in *Bertholf* v. *O'Reilly* (74 N. Y., 519), " in each particular case, means such an exertion of the powers of government as the settled maxims of the law sanction, and under safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Due process of law gave to the defend-ant the right to contest the allegation that the milk was adulterated or impure or unwholcsome. True, he gave his evidence, but the statute silenced its effect. There can be no trial if only one party is permitted to present his proofs, or if the statute requires judg-ment to be pronounced against the defendant upon proof by the people of some other fact not in issue. The legislature cannot restrain a party from setting up a good defense to an action against him. (Cooley's Const. Limitations, 369.) But it is said the legis-lature may make and alter rules of evidence. There is no doubt that in civil cases the legislature can make certain facts *prima facie* evidence of another fact. (*Howard* v. *Moot*, 64 N. Y., 262 ; *Hand* v. *Ballou*, 12 id., 543.) And it has been held competent for the legislature to provide that certain facts, having a tendency to prove the existence of another fact, shall, in criminal cases, be *prima facie* evidence of the latter fact. (*Commonwealth* v. *Williams*, 6 Gray, 1.) But the court was careful to hold that the presumption might be repelled by the circumstances or by other proofs. (*Com-monwealth* v. *Wallace*, 7 Gray, 222 ; *Commonwealth* v. *Rowe*, 14 id., 47.) Here the statute denies the accused that protection. The legislature cannot make certain facts conclusive evidence which

in their nature are not so. (*People* v. *Lyon*, 27 Hun, 180.) Evidence to secure a conviction should be such as to satisfy " the judgment of his peers," or of whatever tribunal that determines the fate of the accused. The legislature may prescribe rules for the admission of evidence, but cannot compel the trial court to hold it conclusive of the defendant's guilt, without regard to that court's conviction or judgment as to its conclusiveness. If the legislature can compel the courts to render judgment contrary to their convictions of the truth, produced by the evidence, then the legislative power can coerce the judicial power; a proposition destructive of the co-ordinate departments of the government.

If the testimony on the part of the defendant was true, his milk was not unhealthy, adulterated nor unwholesome — he was innocent in fact. Certainly, the testimony that tended to show that he was careful, honest and innocent in this transaction ought to have been considered, and, if believed, ought to have resulted in his acquittal. But, under this statute, such evidence can have no weight. The statute regards per centages only. Eighty-eight per centum of water is permitted. The evidence of the chemist showed an excess of less than one-tenth of one per centum, and upon that fraction the statute required the defendant's conviction right or wrong.

We think that the thirteenth section of the act, which requires that, upon a trial for selling adulterated milk, the milk shall be declared adulterated if it do not contain the per centage of ingredients specified in the statute is beyond the legislative power, because it deprives the defendant of his liberty and property without due process of law, in that it deprives him of the right upon the trial of the charge against him, to have the issue determined according to the evidence of the fact, and compels him to submit to the statutory declaration thereof, without having the truth ascertained.

If the result of the statute is to prohibit the sale of pure and wholesome milk, then within the principle reaffirmed in the recent case of *People* v. *Marx**[*] (32 Albany Law Jour., 6) that, " it is one of the fundamental rights and privileges of every American citizen to adopt and follow such lawful industrial pursuits, not injurious to the community, as he may see fit," the prohibition would be beyond the legislative power.

The production and sale of pure and wholesome milk is a lawful industrial pursuit, and is not injurious to the community. The act is not designed to prohibit that. It aims, as it properly may, to suppress the sale of impure and adulterated milk. It prescribes that upon any prosecution for the sale of impure or adulterated milk its per centage of water and milk solids may be shown. This it is competent for the legislature to do. But wherein it provides that upon the fact being shown that the per centages do not comply with the statutory standard, the milk shall be declared adulterated, it seeks to compel the trial court to pronounce judgment upon that fact alone, without regard to what the truth may be shown to be, and therein perverts the due process of law.

Conviction reversed and the defendant discharged.

BOCKES, J., concurs.

LEARNED, P. J. (dissenting):

In *Bertholf* v. *O'Reilly* (74 N. Y., 509), the Court of Appeals asserted in the strongest language that the legislative power had no other limitation than the constitutional restraints and limitations, and that laws cannot be declared void because they are opposed to natural justice.

The principle of the case of *Wynehamer* v. *People* (13 N. Y., 378), as to the destruction of existing property, is not, in my opinion, applicable to the present case. It would be a great stretch of that principle to say that the statute in question deprived persons of their property who owned cows at the time of its passage, because it interfered with, or even deprived them of, the use of the milk which the cows might yield.

But the defendant takes the broader ground that the legislature cannot, under the constitution, prohibit the sale of milk drawn from healthy cows, which, in its natural state, falls below the standard fixed by the act, unless such milk, or the articles made from it, are *in fact* unwholesome or dangerous to public health. How is that question of fact to be determined? The court cannot take judicial notice whether milk below the standard is or is not unwholesome or dangerous to public health. Is that to be a question for the jury? If so, the court must charge a jury, in each case, that if they find

milk below that standard to be unwholesome, then the statute is constitutional; if they find it to be wholesome, then the statute is unconstitutional. Evidently a constitutional question cannot be settled, or rather unsettled, in that way. The constitutionality would vary with the varying judgments of juries.

Either then the legislature can, under the constitution, forbid the sale of milk below a certain standard, whether such milk be in fact wholesome or not; or else they cannot do this, whether that milk be in fact wholesome or not. If they may fix a standard, they must judge whether or not milk below that standard is wholesome. The courts cannot review that judgment.

As was said in another case, " wherever there is a general right on the part of the public, and a general duty on the part of the landowner, or any other person to respect such right, we think it is competent for the legislature by a specific enactment to prescribe a precise practical rule for declaring, establishing and securing such right." And it was further said, by way of illustration, that to erect a powder magazine or slaughter-house so near a village as to be dangerous, would be a nuisance at common law, and that the legislature might establish an authoritative rule determining the distance within which such a structure should not be erected. (*Commonwealth* v. *Alger*, 7 Cush., 95.) Certainly if such a law were enacted, a court could not say that the distance prescribed was too great, or leave it to a jury to determine that point, and thereby to decide on the constitutionality of the law. It cannot then be material to the present question whether milk below the standard fixed by the statute is or is not wholesome. The question must be whether the legislature can establish any standard of purity.

Courts have chosen to speak of laws of the kind in question and of similar classes of laws as passed under " the police power." This phrase throws no light on the question of constitutionality; but only serves as a classification. How very uncertain its limits are may be seen from the fact that Blackstone (cited as authority in *Watertown* v. *Mayo*, 109 Mass., 315) includes, under this head of police power, clandestine marriages, bigamy, etc. (4 Bl. Com., 162). The object however of classing statutes of this kind under the head of police power has been to afford an argument which should

except them from the constitutional prohibition against depriving a person of property without due process of law.

Now, it is very plain that courts have nothing to do with the question of the wisdom, or even, according to our courts, with the natural justice of any particular law. Courts cannot say that the legislature has the constitutional power to pass a judicious law to regulate the sale of articles of food, but have no constitutional power to pass an injudicious law on that subject. It has been said with truth that "under the guise of police regulations personal rights and private property cannot be arbitrarily invaded;" that "the courts are to scrutinize the act and see whether it really relates to and is convenient and appropriate to promote the public health;" that "the courts 'must be able to see that it has at least in fact some relation to the public health; that the public health is the end aimed at and that it is appropriate and adapted to that end." (*In re Jacobs*, 31 Alb. L. J., 84.) Now, an examination of the present law clearly shows that it relates to, and is appropriate to promote the public health. Whether its details are wise we do not know. But its object is evident and is good. Its first section forbids the sale of unclean, impure, unhealthy, adulterated or unwholesome milk. Then its thirteenth gives a statement of some conditions which are included within the terms adulterated, unclean, impure, unhealthy and unwholesome milk. There is nothing, as I think, wrong in this mode of legislation. A law may describe an offense by some general word, and may then say that this word shall include such and such things. This thirteenth section declares that milk drawn from cows within fifteen days before and five days after parturition shall be declared unwholesome, etc., and the same of milk from animals fed on distillery waste, etc., and that milk below a certain stated standard shall be declared adulterated. Now, this is equivalent to saying that no person shall sell milk drawn from cows within that time of parturition, or fed on distillery waste, or milk below a certain standard. And the mere circumstance that section first contains a general prohibition, and section thirteenth a particular specification does not, in my opinion, affect the validity of the statute.

The case of *People* v. *Lyon* (27 Hun, 180) is quite different. There the defendants were indicted for selling liquors to be drunk

etc. The court charged that if a person was seen to drink in the shop this was *prima facie* evidence that the liquor was sold by the occupant with intent that the liquors should be so drunk. The court held that the statute which made *the lawful act of a third person, with which the accused was not connected, prima facie* evidence of his guilt deprived him of his right to a trial by jury and was unconstitutional. The present law only says that a sale of milk below a certain standard is a sale of adulterated milk within the meaning of the law; that a sale of milk from cows fed on distillery waste or from cows within a certain time of parturition is a sale of unwholesome milk within the meaning of the law. This is not a rule of evidence, but an explanation of the meaning of the words used in the statute.

This regulation of a certain standard is like the provision referred to in *Commonwealth* v. *Alger* (*ut supra*), where a law establishes a certain distance from a village nearer than which a powder magazine or slaughter-house should not be erected.

But it is urged by the defendant that this statute may prevent the sale of milk which is in fact pure and unmixed with water. What determined the legislature to fix this standard we do not know. But it may be supposed that different kinds of food produce different degrees of richness of milk. And it may be known to the legislature that certain kinds of food, the softened and innutritious grain, left after the production of ale or grape sugar, will cause a great flow of watery milk; and it may be known to the legislature that this watery milk, supplied as food to children, cheats them with the appearance of nourishment, and deprives them of that nutritious food which they need. It may be known to legislators, then, that milk below the standard which they fix by this law is unsuitable for food and should not be sold. At any rate, all this is a matter for the legislature. In the case above cited, *In re Jacobs*, where perhaps the courts went as far as is safe in declaring a law unconstitutional, the opinion of the court shows that the decision was based on this view, viz., that the law was, on its face, not intended to promote the public health, and would have no such result. As has been said in other cases, it was intended to accomplish other results, in the guise of guarding the public health. Now, there is nothing in the present law which has any other result

in view than the public health. No large manufacturers are to be protected against the competition of single workmen. The law is general in its scope, not limited to two cities. The only fault to be found is that it is unwise, as the defendant claims, to make a certain standard the test, and to forbid the sale of milk below that test. Whether that is wise or not, it is nct for us to say. It is a provision evidently intended for the public health. No other intention can be gathered from the law. Plainly none other existed. And in view of the peculiar difficulties which surround the attempt to secure wholesome milk to the people, it is by no means certain that the establishing of a definite standard is not a judicious provision.

In *Wynehamer* v. *The People* (*ut supra*), the law under consideration prohibited, with certain exceptions, the sale of intoxicating liquors. It will be seen, at page 487, that all the judges were of the opinion that it would be competent for the legislature to pass such an act, provided it was plainly *prospective.* In the later case of *Metropolitan Board of Excise* v. *Barrie* (34 N. Y., 657), the right of the legislature to regulate and control the traffic in intoxicating liquors was affirmed. Now, if the legislature may control and regulate the sale of intoxicating liquors, why may they not exercise a similar power as to the sale of milk? Their control as to such liquors extends to those which are pure as well as to those which are adulterated.

Since the fourteenth amendment was adopted the Constitution of the United States contains a provision similar to that provision of the State Constitution, under which it is claimed that this law is void. It is settled that that amendment does not impair the so-called police power, and it was decided that, under that police power, even a municipality might prohibit washing and ironing in public laundries within certain limits and between certain hours. (*Barbier* v. *Connolly* 113 U. S., 27.) Now here is a business which is useful and proper. It is what was called, *In re Jacobs, a lawful business*, yet at certain times it was absolutely prohibited. The same principle was again laid down in *Soon Hing* v. *Crawley* (113 U. S., 703), the court saying that the right of a man to follow his calling " must be exercised, subject to such general rules as are adopted by society for the common welfare."

In the recent case of *The People* v. *Marx* (99 N. Y., 377) the

court say the object of the law then under consideration was " to drive the substituted article from the market and protect those engaged in the manufacture of dairy products against the competition of cheaper products." In other words, the object of that law, like that of a protective tariff, was to protect the home industry of the farmer against the city industry of the manufacturer. And the court held the law to be void, because it " prohibits an important branch of industry for the sole reason that it competes with another and may reduce the price of an article of food." Evidently the present law has no such characteristics. It is not intended to prohibit any branch of industry or to prevent competition. Its sole object is to regulate and control the quality of a certain article of food, in the interest of the health of the people. And if the legislature, knowing the difficulty of guarding against the watering or other adulteration of milk, deem it best to fix a standard of richness, I think this is within their power, and that, too, irrespective of the question whether the milk is diluted after it is taken from the cow, or whether it is made watery in the animal itself by giving such food as will produce a great flow of what might well be called milk and water.

I think the judgment should be affirmed.

Present — LEARNED, P. J., BOOKES and LANDON, JJ.

Judgment and conviction reversed.

37 329
67 255
37h 329
62ad594.
37h 329
68 AD³419