BEATRICE RANNEY, as Administratrix of the Estate of DONALD M. RANNEY, Deceased, Respondent, *v.* HABERN REALTY CORPORATION, Appellant.

HABERN REALTY CORPORATION, Third-Party Plaintiff-Appellant, *v.* UNITED STONE WORKS, INC., Third-Party Defendant-Respondent.

First Department, February 24, 1953.

*Emile Z. Berman* for third-party plaintiff-appellant.

*Harry Zeitlan* of counsel (*Benjamin H. Siff* with him on the brief; *Abraham H. Leef*, attorney), for respondent.

*Harry Schechter* of counsel (*Bernard Katzen* and *William Steiglitz* with him on the brief; *Bernard Katzen*, attorney), for third-party defendant-respondent.

Breitel, J. Plaintiff recovered judgment after a jury trial for injuries suffered by her intestate, Ranney. Defendant Habern appeals from such judgment and from judgment rendered in favor of the third-party defendant, United Stone. The jury found in favor of defendant Habern on plaintiff's cause of action for Ranney's death. There is no appeal from that finding, and there is no issue on this before us.

Ranney was employed by United Stone in the delivery of stone to a construction job on a site owned by Habern. On

the site was a sidewalk bridge or shed licensed for use as a nonstorage but not as a storage shed. In violation of the ordinance (Administrative Code of City of New York, § C26–557.0), slabs of stone had been stored on the shed. The accident occurred when a draft of stone was being moved by crane from the street to the shed. A choker chain used in securing the draft of stone broke, precipitating the draft of stone to the shed, a distance of three feet. The draft struck the shed with such an impact, namely of fifty tons, that it broke through the shed. Through the opening fell Ranney, the workman for whose injuries this action was brought, and some of the stone that had been stored on the shed in violation of the ordinance. Stone fell on Ranney causing the very serious injuries sustained.

In addition to a general verdict, the jury rendered special verdicts which found that the shed had been constructed only as a nonstorage shed, and not as a storage shed; that it had not been overloaded by the stored stone; that the violation of the ordinance constituted negligence, even though the shed had not been overloaded beyond its safe capacity; that Habern's (the owner's) employee knew or should have known of the storage; that the choker chain supplied by United Stone was not safe and its employees had not used due care; that the owner, Habern's, violation of the ordinance, and of section 200 of the Labor Law, in its failure to supply a safe place to work, as well as its violation of section 240 of the Labor Law (failure to provide protective '' devices '' or scaffolding), was the proximate cause of the accident.

The question is whether the unlicensed storage of stone on the shed was a proximate cause of the injuries sustained by Ranney.

The case had been before this court after a prior trial which resulted in a reversal of a judgment in favor of plaintiff Ranney against Habern, and the granting of a new trial. (279 App. Div. 426.) That record was somewhat different from the record before us now. On the prior record there was no affirmative proof as to the actual carrying capacity of the shed and thus the jury upon the first trial might have found overloading of the shed, and with respect to that, this court, in a majority opinion by CALLAHAN, J., said: '' The immediate cause of the collapse of the bridge was, no doubt, the fall of the draft of stone. But as other stones were stored on the bridge and they fell into the broken area, the jury may have found that their presence was an efficient cause contributing to the injuries

suffered by the plaintiff. There is no contention that the bridge was improperly constructed, and it would only be an unsafe place to work, if it was overloaded. It may have been used at Habern's direction as a place for storage of materials in violation of certain city ordinances, but this would relate to a liability created by the ordinance.'' (Pp. 431–432.)

The jury on this, the second trial has found that the shed was not overloaded. Indeed, the proof on the second trial was such, that it would have hardly been possible for the jury to have found otherwise. All that remains then to connect the owner, Habern, with liability is the unlicensed storage of stone on the shed, without overloading it. It is inferable that some of the stored stone, falling through the hole made by the moving draft of stone, fell on Ranney. The violation of the ordinance, it appears, however, could have been avoided by application for a permit for a storage shed as distinguished from a nonstorage shed.

It will be helpful to distinguish between the cause of the accident and the cause of the injuries. Assuming that the fallen stored stone caused the injuries to Ranney, it is nevertheless clear that the stored stone did not cause the accident.

The ordinance which the jury found Habern to have violated provides that a sidewalk shed '' shall be capable of sustaining safely a minimum live load of one hundred fifty pounds per square foot, but if such sidewalk shed is used for overhead storage of material, it shall be capable of sustaining safely a minimum live load of three hundred pounds per square foot.'' (Administrative Code, § C26–557.0, subd. 2, par. [b].)

Habern had been issued a permit for a nonstorage shed. A reading of the ordinance reveals that this type of structure is meant to protect passersby and workmen on the sidewalk against objects or materials falling from a point above the shed. A storage shed must be of stronger construction, not to give greater protection against such falling objects or materials, but to provide a stronger structure, in order to permit loading, and to guard against collapse from the weight of the material stored. Habern's proof on this trial that the bridge would sustain 340 pounds per square foot on each and every square foot of the bridge simultaneously was not met by any evidence of plaintiff as to the actual carrying capacity of the bridge as constructed. This was in excess of 300 pounds per square foot required by the ordinance for an overhead storage bridge or shed. That the bridge did not collapse because of the stone

stored thereon is established not only by the jury's finding that it was not overloaded, but by the uncontested physical facts. The stone stored on the bridge was actually supported from the afternoon of June 22, 1948, until 8:30 A.M. on June 23, 1948, when the employees of the third party, United Stone, were responsible for the dropping of the draft of tons of stone on the bridge causing it to collapse.

There is, in addition, the ordinance forbidding overloading (Administrative Code, § C26-551.0), which the jury found Habern did not violate.

Obedience to neither of these ordinances could protect against the force of the impact, measured at fifty tons by Habern's witness, on the shed, of the draft of stone weighing one and a half tons. The testimony of plaintiff's own expert, if believed, would not change the result.

Plaintiff cites a number of cases where municipalities were held liable for obstructions permitted to be maintained in public streets, as a result of which, coupled with intervening acts of negligence by third parties, the plaintiffs were injured. (*Cohen* v. *Mayor of City of New York,* 113 N. Y. 532; *Wells* v. *City of Brooklyn,* 9 App. Div. 61; *Murphy* v. *Leggett,* 29 App. Div. 309, affd. 164 N. Y. 121; *Frank* v. *Village of Warsaw,* 198 N. Y. 463.) They are not pertinent, assuming that their authority has not been impaired. They involve situations where the courts explicitly held that the accidents, precipitated by intervening acts of negligence, were or may have been foreseeable as a result of not keeping the streets free from the obstructions.

The Court of Appeals, in the case of *Palsgraf* v. *Long Is. R. R. Co.* (248 N. Y. 339), made clear the principle that must control in fixing liability. Said Judge CARDOZO for the court: " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." (P. 344.)

Here, the risk to be perceived was injury to pedestrians under the shed or to workmen on the shed as a result of collapse of a shed not licensed for storage, but used to store material nonetheless. This ordinance did not include in its orbit the remote consequence of a negligently dropped draft of stone bombarding the shed to its destruction. Thus, in the *Palsgraf* case, it was held that even if the conduct of defendants' guard was a wrong in relation to the holder of the package, it was not a wrong in relation to the plaintiff standing far away.

In point is the language of Judge GRAY of the Court of Appeals in *Leeds* v. *New York Tel. Co.* (178 N. Y. 118, 120–121) which involved facts analogous to the present case: "The theory of defendant's negligence must rest upon the proposition that in the condition of the chimney, which inspection would have disclosed, the defendant should have foreseen possible interference with its wire, in the course of the building operations on the other side of the street, and the possible consequence to the chimney. An apparent vice in this proposition is the assumption that, had the chimney been different, or newer, or sounder, in its construction, it would have been able, successfully, to resist the strain caused by the blow of the great derrick boom against the wire. I doubt that we can indulge in such an assumption, in order to find a concurring act, or omission of duty. It seems to me that guilty, or responsible, concurrence in causing an injury involves the idea of two, or more, active agencies, co-operating to produce it; either of which must be an efficient cause, without the operation of which the accident would not have happened."

That the violation of the ordinance did not cause the accident is clear, nor was the violation, in view of what took place, a breach of duty toward Ranney. " Even where a statutory command is not obeyed there is no breach of duty towards those who do not come within the zone of apprehended danger, and no liability where the injury is not the result of disobedience of the statute." (*Boronkay* v. *Robinson & Carpenter,* 247 N. Y. 365, 368.)

The storing of the stone on the shed was not wrongful because it was a negligent thing to do. It was wrongful only because Habern failed to have a proper permit for such storage. Hence the stored stone may have been a wrongful but passive circumstance in the occurrence. It was the intervening negligence of those who were moving the draft of stone that proximately caused the accident. Such intervening negligence was a supervening cause, fixing no liability on Habern. Its wrongful act could fix liability on Habern only if its act be construed either to have caused concurrently the accident, or if Habern could have reasonably foreseen the intervening negligent act. It could not have foreseen such act, any more than could the defendant in the *Leeds* case (*supra*) have foreseen the intervening negligence. (*Laidlaw* v. *Sage,* 158 N. Y. 73, 99; *Perry* v. *Rochester Lime Co.,* 219 N. Y. 60; *Babcock* v. *Fitzpatrick,* 221 App. Div. 638, affd. 248 N. Y. 608; *Klein* v. *Herlim Realty Corp.,*

184 Misc. 852, affd. 269 App. Div. 934. In accord: 65 C. J. S., Negligence, § 106; 1 Warren on Negligence, § 3, subd. [g]; Prosser on Torts, § 49; 1 Shearman & Redfield on Negligence [Rev. ed.], § 38; Restatement, Torts, § 440 *et seq.*, but particularly § 441 and the comment on subsection [2] thereof).

We may summarize the situation thus.

The wrongful act of Habern was a passive, inoperative circumstance in producing Ranney's injuries. Not being a cause of the accident, as distinguished from the injuries, liability would not attach unless it was reasonably foreseeable that the intervening negligence would occur. In the event of such foreseeability, negligence would be grounded in the failure to take into consideration the probability of the intervening event, and thereby the wrongful act would become a proximate cause of the injuries, and liability would properly attach. As it is, Habern violated no duty of care to Ranney. The physical facts and the jury's finding that the bridge was not overloaded, demonstrate that it was a safe place for Ranney to work. Until the intervening negligent act of the third party, United Stone, in dropping tons of stone on the bridge, the accident could not occur. This intervening negligent act was not reasonably foreseeable, and it was, therefore, a supervening cause of the accident and the injuries that flowed therefrom, for which Habern may not be held liable.

Moreover, the only wrongdoing on the part of Habern was its failure to procure a storage-type shed permit. Such a permit it could have obtained. Had it obtained such a permit there would be no claim of wrongdoing on its part. It would have been insulated from liability. Nonetheless the accident and the injuries would have occurred exactly as they did. There would have been no difference in what happened to Ranney. Consequently, the ordinance and any penalties for its breach, with reference to this case, served only a regulatory purpose. No standard of care, pertinent to this case, was established by the ordinance.

It has not been necessary to discuss the jury's findings of violation of the Labor Law. On our view it has not been shown that Habern supplied an unsafe place to work. Insofar as the choker chain was concerned, that was supplied by the third party, United Stone. For that choker chain Habern had no responsibility, and plaintiff does not contend otherwise.

In view of the foregoing, it is not necessary to consider Habern's appeal against the dismissal of its third-party complaint.

Accordingly, the judgment in favor of plaintiff against defendant Habern should be reversed and the plaintiff's complaint dismissed, and in the light of such dismissal, the judgment in favor of third-party defendant dismissing the third-party complaint should be affirmed.

DORE, J. P., COHN and VAN VOORHIS, JJ., concur.

Judgment, so far as appealed from, unanimously modified by reversing that part thereof which grants judgment in favor of the plaintiff and against the defendant Habern Realty Corporation and, as so modified, affirmed, with costs to the appellant Habern Realty Corporation against the plaintiff-respondent, and with costs to the third-party respondent, United Stone Works, Inc., against the third-party plaintiff Habern Realty Corporation, and plaintiff's complaint is dismissed, with costs.