ALBERT B. DAGGETT, as Administrator of the Estate of JAMES L. DAGGETT, Deceased, et al., Respondents, *v.* AL KESHNER et al., Defendants, and HYMAN BERIBITSKY et al., Individually and as Copartners Doing Business under the Name of B & S GARAGE, Appellants.

First Department, October 26, 1954.

*William L. Shumate* of counsel (*Cusack & Shumate,* attorneys), for appellants.

*Morris Pottish* of counsel (*Wilson, Mangan & Sweeney,* attorneys), for respondents.

BREITEL, J. Two policemen were injured, the one fatally, the other seriously, in an explosion in premises spread with gasoline for the purpose of setting fire thereto and recovering insurance. This followed a scheme between the occupants and two others retained for the purpose of burning the premises. These two purchased gasoline at a garage. The purchases were in quantities exceeding those permitted by law — the purchasers not holding a permit for the transportation, storage, sale or use of the gasoline — and carried away in containers also forbidden by law. Gasoline thus procured was spread around the insured premises by the conspirators. One of the policemen was killed and the other injured when they entered the premises for the purpose of apprehending the conspirators and an explosion occurred.*

Plaintiffs seek damages for the death of the one and the injuries to the other policeman. Defendants, the garage owners who sold the gasoline in violation of the statute, appeal from denial of their motion to dismiss the complaint for legal insufficiency.

---

* For the related case, see *People* v. *Keshner* (304 N. Y. 968, motion for reargument denied, 305 N. Y. 553).

The order sustaining the complaint should be affirmed.

Plaintiffs do not ground liability of the defendant garage owners on common-law negligence. Instead, they rely upon a provision contained in the Administrative Code of the City of New York. This provision (§ C19–153.0) imposes on the vendor of any compound or mixture sold in violation of certain provisions of the code a penal liability, where death ensues from burning by explosion, and a civil liability for bodily injuries.

Special Term held that the complaint sufficiently alleged a violation of the statute, that section C19–153.0 of the code conferred a cause of action in the event of injury or death from an explosion of gasoline sold without the permit required by the code and that, therefore, a good cause of action had been pleaded by plaintiffs.

Defendant garage owners contend there is insufficient allegation of causal connection between the illegal sale and the accident or the injuries sustained, and that, therefore, the complaint should have been dismissed.

Since the acts of conspirators — pouring the gasoline into a large drum and then, by means of fire pails, spreading it about the insured premises — and the resulting explosion of the gasoline were acts that occurred between the illegal sale and the injuries sustained by the policemen, the question in the case is whether the pleading, taking its allegations for this purpose as true, establishes sufficient causal connection to warrant the imposition of statutory liability.

In the field of common-law negligence it is elementary that the act of the wrongdoer which constitutes negligence must be the proximate cause of the accident and plaintiff's injuries. Where a statute defines an act as wrongful, it has been said that if the enactment were intended to benefit the public at large, or only a limited class of which the injured person is not a member, its violation would not constitute, *ipso facto,* negligence. In that case, the violation of the statute, however, if otherwise relevant, is evidence of negligence which the jury may consider in conjunction with all other relevant proven facts. (*Amberg* v. *Kinley,* 214 N. Y. 531, 536; *Stern* v. *Great Island Corp.,* 250 App. Div. 115, 116; cf. *Martin* v. *Herzog,* 228 N. Y. 164.) A proximate causal connection between the wrongful act and the accident must nevertheless exist in order for liability to be imposed. (*Hallenbeck* v. *Lone Star Cement Corp.,* 273 App. Div. 327, affd. 299 N. Y. 777.)

Where, however, the statutory duty of care was imposed for the sole benefit of a class of persons, regardless of the size of the

class, of which the plaintiff is a member, the breach of the statutory duty generally constitutes conclusive evidence of negligence. It is then, also, frequently referred to as negligence per se, or negligence as a matter of law. (*Schmidt* v. *Merchants Desp. Transp. Co.,* 270 N. Y. 287; *Amberg* v. *Kinley,* 214 N. Y. 531, *supra; Martin* v. *Herzog,* 228 N. Y. 164, *supra.*) Even in such case, where liability to the plaintiff is impliedly created by the statute, before redress may be obtained, it has been held that the act, wrongful only by statute, must be the proximate (in the sense of reasonably foreseeable) cause of the accident. (*Maloney* v. *Hearst Hotels Corp.,* 274 N. Y. 106; *Karpeles* v. *Heine,* 227 N. Y. 74; *Stern* v. *Great Island Corp.,* 250 App. Div. 115, *supra.*)

The situation may be somewhat different, when, as here, the statute does more than merely make certain conduct wrongful but imposes, in so many words — and without limitation, civil liability in favor of anyone injured as the result of the violation of the statute. Then, it is even clearer, that the question is no longer whether there is evidence of negligence. The wrongful character of the act with respect to the plaintiff is expressly fixed by the statute, whether we call it negligence per se, negligence as a matter of law, or absolute liability not based on negligence. (*Schmidt* v. *Merchants Desp. Transp. Co.,* 270 N. Y. 287, 305, *supra.*) The remaining question is only whether there is a sufficient connection between the violation and the ensuing accident and injuries. This may not require the same degree of proximate causal connection which we are accustomed to require in the field of negligence. (*Bertholf* v. *O'Reilly,* 74 N. Y. 509, 524, *infra.*)

We now turn to the statute involved in this case. It is found in part I of title C of chapter 19 of the Administrative Code of the City of New York. The title, and this, we shall see, is significant, relates to combustibles and explosives.

Section C19–53.0 deals solely with volatile inflammable oils. It provides that the seller shall report to the fire commissioner monthly on the total quantity of such oil sold in excess of five gallons delivered to each purchaser, other than that delivered into fuel tanks of vehicles and watercraft. It forbids the sale of such oil in excess of one gallon, unless the purchaser holds a permit " for the transportation, storage, sale or use of such oil " except, again, when placed into fuel tanks of vehicles or watercraft. The section provides further for the manner of transportation, the type of container in which such oil must be carried, and for appropriate warning labels.

A further provision of the statute (§ C19–153.0 of the code) establishes criminal penalties and a civil cause of action in favor of an injured person. This section is not confined to combustibles but also relates to explosives. Insofar as relevant it reads: " § C19–153.0 *Criminal liability.*— In case any person is burned by the explosion of any compound or mixture the sale of which is prohibited by this title, or which has not been subjected to analysis or licensed as herein provided, and death ensues therefrom, the person found guilty of selling the same shall be deemed guilty of a felony, and, upon conviction, shall be punished by a fine of not less than one thousand dollars, nor more than five thousand dollars, or by imprisonment in a state prison for a term not less than one year nor more than five years; and in case of a bodily injury the person injured may maintain an action for damages against the person violating the provisions of this title."

The complaint in this case sets forth these provisions of the code and alleges a conspiracy between the occupants of the insured premises and two others for the burning of the premises. It asserts further that the garage owners sold gasoline to the conspirators in quantities of thirty-three gallons and fifty-five gallons, respectively, in a variety of containers (only a portion of which was placed into the fuel tank of their motor vehicle), all without the permit required by the statute and without the garage owners reporting the sales to the fire commissioner as required by the statute. The allegations set forth that the policemen sustained the injuries, resulting in the death of one of them, when, as they entered the insured premises for the purpose of apprehending the occupants, an explosion occurred of the gasoline which had been poured over the premises.

There are relatively few statutes to be found in New York that have expressly imposed civil liability on violators of regulatory statutes. Such statutes need not be limited by their language to require a showing of proximate cause in the sense or to the degree required generally in the law of negligence. Thus, for many years there was in this State a statute which established liability on the part of a vendor of alcoholic beverages, as well as his landlord, for injuries to property or to persons sustained as a result of sales to intoxicated persons. (L. 1873, ch. 646.) In *Jackson* v. *Brookins* (5 Hun 530), it was held that a wife could recover against the seller of liquor and his landlord for the death of her husband who, while intoxicated, was killed by other persons in an affray. In *Bertholf* v. *O'Reilly* (74 N. Y. 509, *supra*), another case arising under this statute,

it was held that the landlord, who knowingly permitted liquor to be sold on rented premises, was liable to an owner of a horse ridden to death by an inebriate to whom his lessee had sold liquor. It is to be noted that the statute by its language, and as construed, not only did not require proximateness of cause in the traditional sense, but also fixed liability even where there were intervening acts of other agents or wrongdoers which precipitated the accident and injuries or loss.

We thus see that it is within the permissible scope of legislation to impose liability for wrongful acts which have a practical or reasonable causal connection with injuries sustained, although the sequence of events would not satisfy the rule of proximate cause in the law of negligence. This does not mean that a statute could validly impose such liability in the absence of some practical or reasonable connection between the act it makes wrongful and the injuries sustained. (*Bertholf* v. *O'Reilly, supra,* p. 524.) But it does mean that the Legislature, in the interest of protecting the public against hazards of a sufficiently serious nature, may disregard the effect of a variety of intervening events, so long as in practical effect the injuries are connected with the violation of the statute. The question then is primarily one of what was the intention of the statute. (Restatement, Torts, § 286, Comment b; 36 C. J. S., Fires, § 11, p. 814; 38 Am. Jur., Negligence, §§ 166, 167; 20 R. C. L., Negligence, § 37.)

There is the familiar rule in New York, referred to earlier, that where the defendant is charged with a statutory violation, liability to the plaintiff may be excluded on the ground either that the violation of the statute did not establish negligence, or that the violation of the statute, while constituting negligence, was not the cause of the accident because of intervening acts. (*Morse* v. *Buffalo Tank Corp.,* 280 N. Y. 110; *Brown* v. *Shyne,* 242 N. Y. 176; *Perry* v. *Rochester Lime Co.,* 219 N. Y. 60; *Hallenbeck* v. *Lone Star Cement Corp.,* 273 App. Div. 327, affd. 299 N. Y. 777, *supra; Flaherty* v. *Metro Stations,* 202 App. Div. 583, affd. 235 N. Y. 605; *Henningsen* v. *Markowitz,* 132 Misc. 547.)

What is significant about each of these cases is that none of the statutes involved expressly created civil liability for its violation. Moreover, the statutes, in imposing only criminal sanctions, cast insufficient light on the scope of civil liability, let alone whether any particular degree of causation is required or intended. Hence, in each of these cases, the familiar rule was applicable, namely, that there must be established a violation of the statute (which may either be conclusive or merely

some evidence of negligence) and that the act, if negligent, was the proximate cause of the accident.

Turning to the statute involved here, we find that title C of the Administrative Code had its origin in 1871. (L. 1871, ch. 742.) Since then it has undergone a number of formal changes. (L. 1882, ch. 410, § 452 *et seq.*; L. 1897, ch. 378, § 760 *et seq.*; L. 1901, ch. 466, § 760 *et seq.*; L. 1937, ch. 929, § C19–1.0 *et seq.*) The liability section in the present code (§ C19–153.0), however, reads almost exactly the same as it did in 1871. (Cf. L. 1871, ch. 742, § 4 with L. 1937, ch. 929, § C19–153.0.) As already noted, the liability section relates, and always has related, both to combustibles and explosives. That is significant because it is highly probable that in dealing with the extraordinary hazards of explosives the Legislature would impose a comparably extraordinary scope of liability. It is quite likely and reasonable for the Legislature to have intended that one who deals with explosives and highly dangerous combustibles in violation of a statute should bear liability for any injury sustained which is causally connected to a practical degree with, or is materially facilitated by, the wrongful act, i.e., to an effective degree that men engaged in everyday affairs would recognize as bearing upon the result — men who would not limit their view to that of a producing proximate cause uninterrupted by intervening independent causation.

In the instant case, before the accident could occur there was required the subsequent deliberate, intentional and criminal act of the conspirators. It may be argued, and we do not pass on it now, that such subsequent act, rather than the illegal sale of gasoline, was the proximate cause of the accident and injuries. But it is equally clear that the illegal sale of the gasoline was more than a passive condition or circumstance in producing the accident. There was a recognizably practical connection between the illegal sale of the gasoline and the explosion in this case, and but for that illegal sale the accident, in a realistic and recognizable sense, would not have occurred. This is sufficient to sustain the validity of the legislation and its application to this case. Had the garage owners reported the sales to the fire commissioner, the authorities would have been on notice. Had the garage owners required a permit for the transportation, storage, sale or use of the gasoline, the sale would not have been made. Had the conspirators sought a permit (a hardly conceivable occurrence), the authorities would have been on notice. The safeguards of the statute, if followed, would have frustrated this conspiracy and obviated death and injury.

It is even arguable, although the complaint does not rely on that theory, that the garage owners could have foreseen improper use of the gasoline when, without production of a permit, it was purchased in extraordinary quantities and carried away in unusual and obviously unsafe containers. It is not without significance that the conspirators went to a place in Brooklyn to purchase the unusually large quantities of gasoline that they used to spread about the insured premises in Manhattan. Had there been such foreseeability even the test of proximate cause in the law of negligence might have been satisfied. (Prosser on Torts, p. 369 *et seq.*)

It should be recognized, however, that a statute which has the effect of imposing liability for a technical violation, which by no pragmatic test would have been related to the injuries, would not, to that extent, be valid. (*Bertholf* v. *O'Reilly,* 74 N. Y. 509, 524, *supra.*) But that is not the situation before us now.

There is found (and curiously, it is not cited by either party to this appeal) but one case in which the liability statute involved here (Administrative Code, § C19–153.0) was raised as a contention. (*Richman* v. *Follman,* 260 App. Div. 1009, affd. 286 N. Y. 669.) In the *Richman* case, the vendor had sold, without the permit required of him by statute, cleaning fluid in containers with warning labels, but the labels did not conform precisely to the requirements of the statute. The vendor had a permit for the sale of benzine but not for " cleaning fluid ", although the fluid sold was composed entirely of benzine. Plaintiff's intestate died as a result of injuries when the " cleaning fluid " was ignited by a flame at the bottom of a gas refrigerator. The ignition occurred while plaintiff's intestate was preparing to use the " cleaning fluid " on fabrics. The labels on the cans had warned that the contents were to be kept away from fire.

In the *Richman* case, plaintiff and the trial court, in sustaining recovery, had relied on the liability statute. In this court, as appears from its *Per Curiam* opinion, she withdrew her reliance on the liability statute and sought an affirmance on the ground of common-law principles involving, of course, the element of proximate cause. This court reversed the judgment in favor of plaintiff, and directed a new trial. In the Court of Appeals, however, plaintiff sought again to invoke the liability statute. It appears, however, from the brief of her adversary that she had withdrawn her reliance on the liability statute in the oral argument at the Appellate Division. The Court of Appeals affirmed this court and directed the entry of judgment absolute, on the stipulation, in favor of defendant. Consequently, the

*Richman* case is not dispositive of the question in this one. The opinion in this court expressly noted that the liability statute was not considered because of plaintiff's withdrawal of such reliance.

The facts in the *Richman* case made it patently clear that there could be no practical connection, but one only in an abstract metaphysical sense, between technical violation of the statute and the injuries which resulted. (*Ranney* v. *Habern Realty Corp.*, 281 App. Div. 278, affd. 306 N. Y. 820.) Neither the requirement that the vendor (rather than, as here, the purchaser) hold a permit nor the variation in the language in the warning, as compared with that required by the statute, would, on any practical view, have avoided the accident which occurred. At least there was no showing or suggestion that the vendor could not have obtained a permit easily, or that obtaining a proper permit would have had any recognizably practical effect in avoiding the accident. In our case, however, the requirement of a permit, if it had been followed, would have materially lessened the chances that the accident would have occurred. The conspirators would hardly go to the fire commissioner and ask for a permit. They could have hardly explained their occasion for use of the gasoline in such extraordinary quantities. They would have hardly been able to comply with the safety requirements that would have been imposed as a condition to the granting of a permit. A seller, on the other hand, who sold to a purchaser without a permit would be aware that these salutary precautions were being by-passed by a permitless purchaser. None of these elements was present in the *Richman* case. So far as one can tell from the facts presented in that case there was but a technical violation of a regulatory statute, without reasonable or practical relation to the accident that was later to occur.

Now, it may be argued, although it was not, that the requirement of the code for a permit to be obtained by the purchaser of gasoline, is primarily, or even solely, to assure compliance with safety requirements in the *legitimate* transportation, storage, sale or use of gasoline. That would not be conclusive of the scope of the liability statute. Surely, if liability was at all to be imposed without question as to proximate cause, in the traditional sense, it would not be withheld where the violation was so gross as to place extraordinary quantities of gasoline in the hands of would-be arsonists, without any of the safety precautions being followed. This is the more so when the safety precautions would have necessarily prevented the condition which precipitated the explosion, resulting in death and injury

to police officers, whose presence was directly connected with the illegal and even criminal use of the unlicensed gasoline. This is indeed a practical connection between violation of the regulatory statute and the ensuing consequences that spells out a closer relationship, for legislative purposes, than even the rule of proximate cause in the field of unintentional wrongdoing — of carelessness, that is the scope of the law of negligence. In the field of negligence we are concerned with placing the burden of loss as between two parties, each innocent of intentional wrongdoing, guilty of no more than lapses that may, but should not, occur in the daily stream of life. Here we have gross violation, for profit, of statutes directly concerned with the urgent protection of life and property from extraordinary hazards, and but for that violation the accident, if it was an accident, in a practical sense would not have occurred, or, at least, it would not have been materially facilitated. The liability statute, quoted above, is absolute and unlimited in its terms. It should not be limited except to the extent that the legislative power would perforce be limited (by a rule of reason or by the scope of practical effect) or to the extent that intention to limit can be clearly implied.

In consideration of the problem presented in this case it should be noted that a different situation might be before us if the sale in violation of the statute involved, for example, an inconsequential quantity of gasoline and did not involve, as it did in this case, the use of unusual containers. Put another way, to determine whether or not there is a reasonable or practical relation between the violation of the law and the accident one must examine the complex of facts. The complex of facts asserted in this pleading, we hold, for the reasons set forth, is sufficient to establish a *nexus* for liability.

It is clear, therefore, that on the pleadings a sufficient cause of action is alleged. That is, the pleadings allege sufficient causal connection, but of course, the issue of fact to be determined on the trial will still be whether the evidence establishes such reasonable or practical connection between the illegal sale and the accident as will determine liability under the statute. The statute imposes liability for injuries sustained as a result of the violation of the statute, so long as there is a recognizably practical or reasonable connection between the violation of the statute and the accident which occurred. This we find was within the scope of the legislative power and intention in imposing extraordinary sanctions in the enforcement of regulations dealing with such dangerous instrumentalities as combustibles

and explosives (but cf. *Morse* v. *Buffalo Tank Corp.*, 280 N. Y. 110, 116, *supra,* where there was no legislative expression of intention to broaden the scope of liability for use of gasoline).

Accordingly, the order denying the motion to dismiss the complaint for legal insufficiency should be affirmed, together with costs and disbursements to respondents.

COHN, J. P., CALLAHAN, BASTOW and BOTEIN, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to the respondents.