ALBERT B. DAGGETT, as Administrator of the Estate of JAMES L. DAGGETT, Deceased, et al., Respondents, v. AL KESHNER et al., Defendants, and HYMAN BEREBITSKY et al., Individually and as Copartners Doing Business Under the Name of B & S GARAGE, Appellants.

First Department, November 5, 1958.

504

*William L. Shumate* of counsel (*Cusack & Shumate*, attorneys), for appellants.

*Morris Pottish* of counsel (*Wilson, Mangan & Sweeney*, attorneys), for respondents.

*Matthew S. Gibson* of counsel (*Robert Hill Nix* and *Paul A. Crouch* with him on the brief; *Matthew S. Gibson*, attorney), for Gulf Oil Corporation, *amicus curiæ*.

BOTEIN, P. J. This case arises as the aftermath of an explosion in a loft building, which occurred during an attempt to commit arson on the premises of the defendant Keshner, Inc., and resulted in the death of Detective Daggett and serious injuries to Detective Phelan, while they were in the act of apprehending the conspirators. Plaintiff Daggett, the father of the fatally injured detective, as administrator, and plaintiff Phelan, on his own behalf, have brought this action to recover damages, not only from defendants Keshner and Keshner, Inc., but also

from defendants Berebitsky and Katz, the operators of a garage at which the gasoline used in the arson scheme was purchased.

In *Daggett* v. *Keshner* (284 App. Div. 733) this court in a comprehensive opinion by BREITEL, J., sustained the sufficiency of the plaintiffs' complaint as against the defendant garage operators. The complaint was not predicated on common-law negligence, but on liability imposed for violation of a statutory duty. Section C19–53.0 of the Administrative Code of the City of New York, among other things, provides that the seller shall report to the Fire Commissioner the sale of more than five gallons of volatile, inflammable oils not delivered into a vehicle fuel tank, and forbids the sale of such oil in such circumstances in excess of one gallon unless the purchaser holds a permit. The statute also specifies the types of containers which must be used, and requires warning labels. Section C19–153.0 provides that in the event of explosion, actions for damages may be maintained against persons violating its provisions by persons injured.

This court held that plaintiffs could recover under the statute if they could establish a reasonable or practical connection between the illegal sale and the accident on the trial — a connection that need not satisfy the requirement of proximate cause in the conventional common-law negligence action (*Daggett* v. *Keshner, supra*).

The case went to trial before court and jury. At the outset, the defendants Keshner and Keshner, Inc. withdrew their answer and voluntarily defaulted, and the case proceeded against defendants Berebitsky and Katz alone as to the issue of liability. The jury awarded damages of $50,000 to Daggett and $35,000 to Phelan against the Keshner defendants, but was unable to come to an agreement as to the liability of Berebitsky and Katz. The court held that the amount of damages had been established for all defendants by the jury verdict as to the defaulting defendants, and directed a new trial restricted solely to the issue of the liability of Berebitsky and Katz (*Daggett* v. *Keshner*, 14 Misc 2d 154). On the second trial, restricted to issues of liability, the jury found these defendants liable, and they appeal from the judgment entered thereon, as well as the previous order limiting the trial to the issue of liability.

The testimony adduced on both trials fully substantiated the allegations of the complaint, and provided an adequate basis for the recovery. It was established that in 1951 Keshner, who operated the Keshner, Inc. factory in a loft building in Manhattan, worried about his failing business, conceived the idea of having a fire to collect on his insurance policies. For this

purpose, he hired Weiss and Shapiro, two notorious Brooklyn criminals. Weiss guaranteed to burn the whole place down so that Keshner would collect the full amount of his insurance.

On July 21, 1951 Weiss, whom Berebitsky and Katz knew well, came to their garage in Brooklyn and purchased 33 gallons of gasoline, 13 of which were pumped into the automobile gas tank and the balance into four 5-gallon cans. This was in violation of section C19–53.0 of the Administrative Code, since Weiss did not hold a purchase permit. Berebitsky entered the transaction in the books but falsified the records to conceal the fact that the sale had been made to Weiss. The sale was never reported to the Fire Commissioner as required by the code.

On August 31 Weiss returned to appellants' garage with Shapiro and purchased 42.6 gallons from Katz. The gasoline was put in nine or ten 5-gallon cans. The cans were put in cartons in Weiss' car, which was left in the garage with Katz' consent. It was decided not to set the fire that night, and a few days later Weiss returned to the garage where one of appellants' employees took the cartons out and stored them in a locker covered with a painter's drop cloth. The next day, as Berebitsky watched, the cartons were loaded into the Keshner car. On September 10 the car was driven to Keshner's loft building. The cartons were brought up to the fifth floor where the gasoline was poured into a 55-gallon oil drum and then emptied by means of fire buckets and splashed all over the premises. Keshner then drove off but was apprehended by detectives who had been keeping Weiss and Shapiro under surveillance. Keshner told them of the arson plan and Detectives Phelan and Daggett went up to the fifth floor and apprehended Weiss and Shapiro. As they re-entered the loft to get Shapiro's coat and shirt, the explosion occurred, killing Daggett, Weiss and Shapiro and injuring Phelan.

This evidence fully establishes the necessary causal connection between the violation of the statute and the injuries sustained in the explosion. It was the gasoline which appellants illegally sold in quantity to an unlicensed purchaser of criminal reputation which was used for the arson attempt. Appellants' violation of the statute cannot be dismissed as a mere oversight, for they indicated a guilty knowledge when they falsified the records as to the identity of the purchaser. They also failed to report the sale to the Fire Commissioner. The jury had ample basis for finding at the least a reasonable or practical connection between appellants' noncompliance with the statutory provisions and the disaster which ensued. Their illegal sale of the gasoline was certainly a facilitating cause of the accident,

and the Legislature has seen fit to impose liability in such a case even though the acts of others more directly responsible for the accident may have intervened.

"Had the garage owners reported the sales to the fire commissioner, the authorities would have been on notice. Had the garage owners required a permit for the transportation, storage, sale or use of the gasoline, the sale would not have been made. Had the conspirators sought a permit (a hardly conceivable occurrence), the authorities would have been on notice. The safeguards of the statute, if followed, would have frustrated this conspiracy and obviated death and injury" (*Daggett* v. *Keshner*, 284 App. Div. 733, 739, *supra*).

Although the question of the statutory liability of garage operators for violations of the Administrative Code was considered fully on the prior appeal dealing with the sufficiency of the complaint, the Gulf Oil Corporation has submitted a brief as *amicus curiæ* which urges different grounds in support of the contention that the violations here involved do not constitute any basis for statutory liability, and that the common-law requirement of a showing of proximate cause is still applicable. Section C19–153.0 (ch. 19, tit. C) of the Administrative Code of the City of New York expressly provides for criminal and civil liability in the event of a violation of the provisions of "this title". It was the provisions of section C19–53.0 of title C which were violated. Nevertheless, it is urged, the Administrative Code of 1937 purported to be merely a codification of existing law, and could not serve to enlarge liability and create new liabilities which did not exist prior to the codification (L. 1937, ch. 929, §§ 1–0.0, 982–1.0, 983–1.0; *Stein* v. *Pershing Square Bldg. Corp.*, 191 Misc. 30, affd. 275 App. Div. 831, affd. 300 N. Y. 665). The question then is whether violations such as these here involved were subject to civil and criminal penalties prior to 1937.

The liability provisions of section C19–153.0 are derived from section 767 of title 3 of the Greater New York Charter of 1901 (L. 1901, ch. 466), which title, while dealing with the requirements of licenses for sellers, contained no provisions prohibiting nonfuel tank sales to purchasers without permits or requiring reports of such sales to the Fire Commissioner. These provisions, now embodied in section C19–53.0, had their origin in section 295 of the Regulations of the Municipal Explosives Commission of the City of New York, and were then enacted as ordinances (Cosby's Code of Ordinances of the City of New York, 1914, 1915; Ash's Greater New York Charter, § 765). These ordinances contained no provisions dealing with civil or

criminal liability. However, section 767 of the Greater New York Charter of 1901 imposed statutory liability '' [i]n case any person is burned by the explosion of any compound, the sale of which is prohibited by any law or ordinance ''. It was thus indicated that statutory liability was not to be restricted solely to those acts which were illegal in 1901. The statute was prospective in application, and would, by its terms, cover changes and enlargements of the laws and ordinances. The grouping of the regulatory provisions of section C19–53.0 in the same title with section C19–153.0, imposing statutory liability, was not inadvertent, and codification did not create new substantive liabilities where none had existed before.

The argument of the appellants that no sufficient connection was shown between their acts and the explosion, because the conspirators might have obtained the gasoline elsewhere if they had refused to make the sales, is untenable. What *might* have occurred under a different set of circumstances will not suffice to relieve appellants of the consequences of what actually did occur. Indeed, the evidence adduced could sustain a much greater burden than plaintiffs are required to bear under the statute. The evidence as to appellants' knowledge of the purchaser's character and identity, the large quantity of gasoline purchased in containers, the concealment of the sale on the books, and the unimpeded use of the garage as headquarters for storage and transfer of the gasoline, might well be sufficient to sustain the inference that appellants knew or should have known that the gasoline was not to be used by Weiss on a '' fishing trip '', as they claim he told them, but for arson.

The action of the first trial court in directing a new trial restricted solely to the question of appellants' liability calls for comment. At the first trial the court correctly charged that the Keshner defendants having defaulted, the jury should decide the damages of the plaintiffs as against them, and then go on to decide whether there was any liability on the part of the defendants Berebitsky and Katz. It charged that the rule of damages would be the same as to all defendants found liable. The jury was not asked for a special verdict or for special findings on specific questions of fact.

After eight hours of deliberation the jury reported that they were unable to agree. The court asked whether they had found a verdict against the Keshner defendants. The jury reported that they had and in the action against Keshner and Keshner, Inc. reported an award of $50,000 to plaintiff Daggett and $35,000 to plaintiff Phelan. They reported that they were unable to reach agreement as to Berebitsky and Katz. The

court then discharged the jury and granted the motion of plaintiffs for a new trial solely on the issue of the liability of Berebitsky and Katz, holding that they were bound by the jury's finding on the quantum of damages.

Where there has been disagreement as to one or more, but not all, of the issues submitted to the jury, section 463 of the Civil Practice Act permits the court in its discretion to direct a retrial limited to issues on which the jury disagreed. This presupposes some specific findings by the jury. On the first trial, however, no verdict at all was rendered against defendants Berebitsky and Katz. So far as they were concerned, the trial was a nullity (*Reade* v. *Halpin,* 180 App. Div. 157). No verdict having been rendered against Berebitsky and Katz, they could not be bound by findings of fact implicit in the general verdict rendered against their codefendants. Only if the jury had made special findings as to damages, or rendered a special verdict applicable to Berebitsky and Katz, could it be said that any of the issues were disposed of with respect to them. There will be times when a jury is deadlocked in a case submitted for its general verdict, and when it is apparent that they have reached agreement on some aspects of the case. If it is deemed desirable to separate and eliminate some of the issues from the subsequent trial, the appropriate procedure would appear to be resubmission of the case to the jury with instructions to find upon specific questions of fact.

Appellants argue that in thus being forced to a new trial limited to the question of liability, they were deprived of their right to contest the quantum of damages assessed by the jury in the first trial. However, after argument the parties stipulated that appellants would waive any claim of error in the order limiting the issues on the second trial upon a reservation of their right to argue whether the damages awarded on the first trial were excessive. We find no excessiveness in the verdict of $35,000 for plaintiff Phelan, who was severely burned on the head, face, eyes, neck, back, arms and legs. He was hospitalized for over a month and confined to his home for three months thereafter. He was retired from the Police Department on a certificate of permanent disability. He received permanent scars and burns, loss of wages and interruption of his career.

The award of $50,000 to plaintiff Daggett, for the death of his son, does appear to be excessive. At the date of decedent's death the father was 63 years of age and a widower who occupied an apartment with his son, whose earnings were $4,900 yearly. There was no proof as to the amount the decedent contributed to the support of his father. In view of the father's

life expectancy of 12¼ years, an award equal to decedent's total prospective earnings over that period is excessive. The judgment in favor of plaintiff Phelan should be affirmed, with costs, and the judgment in favor of plaintiff Daggett should be reversed and a new trial ordered, with costs to abide the event, unless plaintiff stipulates to accept $25,000, plus interest from the date of decedent's death, in which event it is affirmed, as modified, without costs.

BREITEL, RABIN and M. M. FRANK, JJ., concur.

Judgment in favor of plaintiff Phelan affirmed, with costs, and the judgment in favor of plaintiff Daggett reversed, on the ground of excessiveness of the award, and a new trial ordered, with costs to abide the event, unless plaintiff stipulates to accept $25,000, plus interest from the date of decedent's death, in which event it is affirmed, as modified, without costs.

Settle order.