Meyer, J.
(dissenting). The majority’s conclusion that defendants are entitled to summary judgment because as a matter of law defendant landlord’s failure to supply hot water was not the proximate cause of plaintiff’s injury is, in my view, contrary to the policy considerations concerning proximate cause and foreseeability previously espoused by this court and to the legislative purpose enunciated by section 78 of the Multiple Dwelling Law. I, therefore, respectfully dissent.
The question on defendants’ motion for summary judgment is whether construing the facts in the light most favorable to plaintiffs there remains an issue for the trier of fact, not how that issue would be determined by us were we the fact finders. Those facts are that plaintiff, Harold Martinez, then five years of age, was injured on May 3, 1975 when he ran out of the bedroom in his parents’ apartment and collided with a pot of hot water his father was carrying. As a result he suffered third degree burns over much of his body, permanent scarring and functional deformity. His father was carrying in the pot, from the kitchen to the bathroom, water which he had heated on the kitchen stove because the hot water boiler was broken. It had been out of repair for more than two weeks prior to Harold’s injury, a fact which had been reported both to *821 defendants and to city officials. Indeed, the breakdown which resulted in Harold’s injury was but the latest in a series of breakdowns stretching over a period of 15 months, about which tenants of the building had likewise complained to defendants and city officials and concerning which violations had been issued. For purposes of the motion defendants do not dispute that the boiler was broken, that there was no hot water and that they had notice of the condition. Yet Harold Martinez’ injuries are not to be compensated because, the majority concludes, they are not "normally to have been expected to ensue from the landlord’s dereliction” and because "the intervention of the father brought about injuries to his son which were entirely different in character from any that would have resulted from failure to supply hot water alone.
To make proximate cause turn upon the character of injury suffered is a fallacious concept, inconsistent with our prior holdings. In Matter of People (Guardian Cas. Co.) (253 App Div 360, affd 278 NY 674) the injury complained of occurred as follows: defendants, driving a taxicab and a private car collided with one another, and the taxicab came to rest against a stoop, dislodging one of the stones. Plaintiff, the operator of a laundry in the building, was called to the scene. When a tow truck attempted to pull the cab away from the stoop, the stone fell from the stoop, killing plaintiff. Although the injury was obviously different in kind from that which would have resulted from simple negligent driving, nevertheless, both drivers were held liable. In Parvi v City of Kingston (41 NY2d 553) plaintiff was injured by an automobile when he wandered on to the highway. The negligence of the police officer there involved was in picking plaintiff up in the City of Kingston, intoxicated, and leaving him on its outskirts on a golf course, presumably to sleep it off. Again the injury suffered was wholly different from what would have resulted (illness, exposure) from the officer’s negligent act considered by itself. So, also, a negligent defendant is liable for the full consequences of the medical malpractice of plaintiff’s treating physician notwithstanding that those consequences may differ very substantially from the injuries inflicted by the negligent defendant (Milks v Mclver, 264 NY 267).
Essentially the problem is not one of causation but of policy concerning the point beyond which responsibility should not be imposed (Ventricelli v Kinney Car System Rent A Car, 45 NY2d 950, 952; Pagan v Goldberger, 51 AD2d 508; Prosser, *822 Torts [4th ed], § 44, p 270; 1 NY PJI2d 212). As the Comment to PJI puts it "The issue is at what point is a defendant whose negligent act or omission has contributed to an injury to be relieved of liability by reason of the fact that after his act or omission a new and independent cause comes into operation?”
Traditionally, the answer to that question has turned on whether the intervening act is one that flows naturally from the original wrongful act or could reasonably be foreseen, which has generally been held to be a jury question (Parvi v City of Kingston, 41 NY2d 553, 560, supra). To be considered in determining the issue, we are told by subdivision (c) of section 442 of the Restatement, Torts 2d, is "the fact that the intervening force is operating independently of any situation created by the actor’s negligence, or, on the other hand, is or is not a normal result of such a situation”. From section 443 and its Comment and section 447 we learn that "The intervention of a force which is a normal consequence of a situation created by the actor’s negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about” (§ 443), it is not necessary that the third person’s act be "reasonable” (ibid., Comment a), that the original actor may be liable even though the third person acts negligently (§ 447), and that the word "normal” is not used in the sense of usual, foreseeable or to be expected, but means rather "that the court or jury, looking at the matter after the event, and therefore knowing the situation which existed when the new force intervened, does not regard its intervention as so extraordinary as to fall outside the class of normal events” (§ 443, Comment b; § 447).
New York courts have consistently applied these principles: in Gardner v Fleckenstein (3 NY2d 812), to hold a homeowner who had left paraffin wax heating on a stove liable to plaintiff who was walking on the lawn when a workman on the premises, seeing flames in the kitchen, seized the flaming wax pot and threw it into the yard, burning plaintiff; in Miller v Board of Educ. (291 NY 25), to hold a board of education liable for failure to repair a fire escape door, though plaintiff would not have been injured had the teacher not failed to supervise plaintiff’s play; in Parvi v City of Kingston (supra), to hold the city liable for the police officer’s negligence, even though plaintiff would not have been injured had a car not arrived on the highway at the same time and place as he; in Foley v State of New York (265 App Div 682), to hold the State liable *823 for failure to replace a burned out bulb in a traffic light, even though plaintiff would not have been injured had the drivers of the cars which collided not been negligent.
Against the background of these cases and the Restatement formulations quoted and referred to above, it is difficult to understand the majority’s conclusion that there is here no question for the jury. Surely it cannot be said that the act of Renaldo Martinez, Harold’s father, in heating water on the stove in the kitchen and carrying it to the bathroom for purposes of cleanliness was other than a normal consequence of defendants’ failure to keep the hot water boiler in repair, or that in view of the well-known propensities of children to climb about and play (Collentine v New York, 279 NY 119; Parnell v Holland Furnace Co., 234 App Div 567, affd 260 NY 604), Harold’s act in running out of the bedroom was "so extraordinary as to fall outside the class of normal events”.
That the circumstances of this case present a question of fact for the jury is, moreover, clear not only from cases such as Parvi v City of Kingston (supra) and Kingsland v Erie County Agric. Soc. (298 NY 409), but also from our decision in Cochenour v Jackson (237 NY 505) and that of the New Jersey Appellate Division in Mitchell v Friedman (11 NJ Super 344). In Cochenour we upheld a verdict for plaintiff for the wrongful death of a four-month-old infant, which resulted from the failure of the landlord to heat the apartment in which the child lived, as required by the Sanitary Code, notwithstanding the landlord’s arguments that it was the weather and the condition of health of the infant rather than his failure to heat which was the proximate cause of the child’s death. In the Mitchell case, the New Jersey court held that it was for the jury to decide whether defendant landlords should have foreseen that as a result of their failure to repair the plumbing for 12 days after a fire, plaintiff, because the water pressure was insufficient to cause the toilet to flush, would injure her back while lifting a pail of water from the bathtub in order to maintain sanitary conditions in her apartment. Its reasoning (11 NJ Super, at p 348) was: "The act of the defendant need not be the only factor in bringing about the injury, but it must be a substantial factor. The ordinary course of events often includes the unexpected; sometimes it presents what, in advance, would seem most unlikely to happen, as in Hammil v. Pennsylvania R. R. Co., supra. [56 NJL 370, 29 A 151.] And on the other hand, the outcome may *824 be so extraordinary that the wrongdoer is not considered liable. Restatement, Torts, § 433. Whether the injury received by plaintiff was the 'natural’ result of defendants’ negligence, was a question for the jury.”
The more particularly should our conclusion be that there is a question for the jury when it is remembered that what is here involved is the failure to comply with section 78 of the Multiple Dwelling Law. Adopted some 50 years ago, when the law of landlord and tenant was, to say the least, stringent with respect to tenants’ rights (see, e.g., Quinn & Phillips, Law of Landlord-Tenant: A Critical Evaluation of the Past With Guidelines for the Future, 38 Fordham L Rev 225), that section provides, in its subdivision 1, that "Every multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair. The owner shall be responsible for compliance with the provisions of this section”. As Mr. Justice Hopkins noted in his classic opinion on foreseeability and proximate cause in Pagan v Goldberger (51 AD2d 508, 512, supra), "the interests or public policy are embodied in the statutory command that a landlord of a multiple dwelling should maintain the premises in good repair (Multiple Dwelling Law, § 78).” It is the Legislature, of course, which is the primary progenitor of public policy, and it is not unknown to the law of proximate cause that a lesser connection between negligence and injury be required with respect to violation of statutory standards than for violation of common-law requirements (see, e.g., Mead v Stratton, 87 NY 493, 496 [Dram Shop Act]; Daggett v Keshner, 284 App Div 733, judgment after trial mod 6 AD2d 503, affd 7 NY2d 981 [Administrative Code provisions re sale of gasoline in cans]; Rogers v Missouri Pacific R. R. Co., 352 US 500 [Federal Employers’ Liability Act]).
While it is true that in those cases the ruling was based on the wording of the statute (Rogers, supra) or an intent to create absolute liability, found in the wrong sought to be remedied (Mead and Daggett, supra), that should not be a sine qua non for application of the lesser standard. Especially is this true with respect to a statute the purpose of which was to right the imbalance between landlords and tenants, as Judge Cardozo (as he then was) so ringingly declared in the following passage from Altz v Leiberson (233 NY 16, 18-19) with *825 respect to the Tenement House Law provision,* which was the predecessor of section 78 of the Multiple Dwelling Law:
"The comprehensive sweep of this enactment admits of no exception * * * The meaning is that the premises shall not be suffered to fall into decay. The duty to prevent this, which, in part at least, once rested upon the tenant, is now cast upon another.
"A narrower construction ignores, not only the letter of the statute, but the evil to be cured. A 'tenement house,’ as the meaning is enlarged by the definition of the statute, may include the dwellings of the rich. In its primary and common application, it suggests the dwellings of the poor (Hitching v. Brown, 180 N. Y. 414, 422). We may be sure that the framers of this statute, when regulating tenement life, had uppermost in thought the care of those who are unable to care for themselves. The legislature must have known that unless repairs in the rooms of the poor were made by the landlord, they would not be made by any one. The duty imposed became commensurate with the need. The right to seek redress is not limited to the city or its officers. The right extends to all whom there was a purpose to protect (Amberg v. Kinley, 214 N. Y. 531, 535; Martin v. Herzog, 228 N. Y. 164, 168; Bornstein v. Faden, 149 App. Div. 37; 208 N. Y. 605).”
A statute such as section 78 of the Multiple Dwelling Law should be interpreted "according to its true intent and meaning, having in view the evil to be remedied and the object to be attained” (Mead v Stratton, supra, at p 496).
Whether because there is a jury question of foreseeability under the general test of proximate cause in the law of negligence (cf. Daggett v Keshner, 284 App Div, at p 740, supra), or because in light of the purpose of the Multiple Dwelling Law there was "a recognizable practical connection” between the violation of that statute and Harold Martinez’ injury (id., at p 739), the defendants are not entitled to summary judgment of dismissal.
For the foregoing reasons, I would reverse and reinstate the order of Special Term denying defendants’ motion for summary judgment.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Meyer dissents and *826 votes to reverse in an opinion in which Judge Fuchsberg concurs.
Order affirmed.

 Section 102, which read simply: "Every tenement house and all parts thereof shall be kept in good repair”.